UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GEORGE BROWN,

                Plaintiff,

        -against-

FREEPORT POLICE DEPARTMENT and
NASSAU COUNTY D.A. OF NEW YORK,

                Defendant.
------------------------------------------------------------X
GEORGE BROWN,

                Plaintiff,

        -against-

RALPHAEL MORALLES, the Superintendent,
NASSAU COUNTY DISTRICT ATTORNEY,
FREEPORT POLICE DEPARTMENT,
1ST BALDWIN PRECINCT, SERGIO,
Incorporated Freeport Village Department,
FREEPORT FIRE DEPARTMENT, PAMELA
ROBINSON, and ATM REAL ESTATE,

                Defendants.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**
13-CV-4047 (SJF)(GRB)

13-CV-6514 (SJF)(GRB)

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★    JAN 23 2014    ★

**LONG ISLAND OFFICE**

FEUERSTEIN, District Judge:

On July 15, 2013, incarcerated *pro se* plaintiff George Brown ("plaintiff") filed a civil rights complaint in this Court pursuant to 42 U.S.C. § 1983 ("Section 1983") against defendants Freeport Police Department ("the Freeport Police") and the Nassau County D.A. of New York ("the D.A."), accompanied by an application to proceed *in forma pauperis*. That action was assigned docket number 13-CV-4047 (the "first action"). By order dated October 9, 2013 (the "October Order"): (1) plaintiff's application to proceed *in forma pauperis* was granted; (2) plaintiff's Section 1983 claims seeking release from custody were *sua sponte* dismissed pursuant

to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim for relief, without prejudice to filing a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241, *et seq.*; (3) plaintiff's Section 1983 claims seeking damages were stayed pending the termination of the underlying criminal proceedings against him; and (4) the first action was administratively closed with leave to reopen within two (2) weeks of the termination of the underlying criminal proceedings against plaintiff. See October Order at 5-6.

On November 20, 2013, plaintiff filed a second civil rights complaint in this Court pursuant to Section 1983 against the Freeport Police and the D.A., as well as an additional six (6) defendants: "Ralphael Moralles/the Superintendent" ("Moralles"); 1st Baldwin Precinct ("First Precinct"); "Sergio/Incorporated Freeport Village Department" ("Sergio"), the Freeport Fire Department, Pamela Robinson ("Robinson") and ATM Real Estate, accompanied by an application to proceed *in forma pauperis*. The second action was assigned docket number 13-CV-6514 (the "second action"). Since plaintiff's financial status, as set forth in his declaration in support of his application to proceed *in forma pauperis* in the second action, qualifies him to file the complaint without prepayment of the filing fees, see 28 U.S.C. § 1915(a)(1), the application to proceed *in forma pauperis* in the second action is granted. However, for the reasons set forth below, the first and second actions are consolidated for all purposes; plaintiff's Section 1983 claims seeking release from custody in the second action are *sua sponte* dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim for relief; plaintiff's Section 1983 claims seeking damages in the second action are stayed pending termination of the underlying criminal proceedings against him; and plaintiff's Section 1983 claims against Moralles, Robinson and ATM Real Estate are *sua sponte* dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim for relief.

2

I.  The Complaints

The complaints in both actions allege that upon walking into the building in which he resides on November 5, 2012, plaintiff smelled smoke coming from the incinerator room located on the first floor, so he walked into that room. (Complaints in both actions ["Compls."], ¶ IV). Moralles, the superintendent of the building, then entered the incinerator room and, upon seeing plaintiff, thought plaintiff had started a fire and asked him about it. (Handwritten Statements Annexed to Complaints in both actions. ["Stats."] at 1). Plaintiff told Moralles that he did not know anything about a fire, then left the incinerator room and went to his apartment. (Id.) As soon as he got into his apartment, "Nassau police with the Freeport Police" arrived. (Compls., ¶ IV; Stats., at 1). When plaintiff opened the door to talk with the police, they forced their way into his apartment and searched it without a warrant. (Compls. ¶ IV; Stats., at 2). According to plaintiff, he was arrested without explanation, then transported by "Nassau County police" to the First Precinct. (Compls. ¶ IV; Stats., at 2). In the first complaint, plaintiff alleges that he has been imprisoned for a period of eight (8) months "without NO indictment." (Stat. in first action, at 2). In the second action, plaintiff alleges that he has been imprisoned for a period of twelve (12) months and was finally indicted on September 17, 2013. (Stat. in second action, at 1). According to plaintiff, his "B felony got dropped down to 5 A's Misdemeanors with 4 Felonys [sic] as 2 B's and 2 C's[]" and he "[s]till don't [sic] have no Time serve [sic] or sentence to be Discharge [sic] from Nassau County Correctional Center." (Id.)

In the second action, plaintiff additionally alleges that Sergio, a Village inspector, and a fire marshal from the First Precinct "were at [his] Apartment at the Time [of his November 5, 2012 arrest]." (Stat. in second action, at 1). According to plaintiff, he was: (1) "forced to Confessed [sic] by The Authorities And Coecresion [sic] by Them tool [sic] as well[;]" (2) "frustrated * * * Intimidated[] [and] Manipulated by them for having [him] to signed [sic] a

3

statement that were [sic] False And Going on video to say a False statement At The First Precinct * * *[;]" and (3) "'Scared!' [him] To say That [he] did The Arson 2nd Degree." (Id.) Plaintiff alleges that he "finally remembered" that "[t]he Authorities" threatened "to have their unknown People to retaliate [against him]" if he filed a civil rights complaint against them. (Id.) In addition, the complaint in the second action alleges, *inter alia*: (1) that "these cops from the [F]irst Precint [sic] stared at [plaintiff], While [he] was using their Mens Bathroom * * *[,]" (Stat. in second action, at 2); (2) that "[t]hese Nassau County cops Have done Sexual Harassment to [him] and Racist, Because [he is] An African Black American[,]" (Id.); (3) that he has been discriminated against by the "Authorities" and the D.A. because of his race and diagnosis of mental illness, (Compl. in second action, ¶ V); and (4) that he has been "Persecuted and Retaliated" against by the police because Moralles told them that he is "a Gay Homosexual," (id.).

Moreover, plaintiff alleges in the second action that on October 2, 2012, as he was entering his apartment building, Robinson, another tenant in the building, tried to spray him with pepper spray and her son "snucked [sic] Behind [him], To put a big bruise on the Right side of [his] face." (Stat. in second action, at 3). According to plaintiff, the Freeport Police "took [f]orever[,]" (id.), to arrive after he called them, in "retaliation against [him] from * * * Moralles And The ATM Real Estate that owns the Building[,]" (id.), and before they arrived, Robinson "ha[d] told all the tenant neighbors outside * * * To tell the cops[] That They didn't saw [sic] What had happened." (Id.) Plaintiff alleges that the police would not let him press charges against Robinson's son "[b]ecause [he] Didn't have any witnesses on [his] side And It [sic] wasn't no camera in the building." (Stat. in second action, at 4). In addition, plaintiff alleges

4

that he once told Robinson, when they were friends, that he was "[l]ockup [sic] back in 2002 for setting A cardboard dumpster on fire * * *," (id.), and Robinson "backstabbed [him] in the face for no Reason," (id.), by telling the police while he was making his police report about her son that he had been "locked up for Arson several years ago in Rikers Island." (Id.) According to plaintiff, when he was arrested on November 5, 2012 and charged with arson in the second degree, the police told him "That This is another reason why * * * [he] gotten 'blame!' [sic] * * * Because [he had] a Previous Record For The Same thing." (Id.)

In the section of the form complaint asking plaintiff to describe his injuries and state what medical treatment he received, plaintiff wrote: (1) the word "None" in the complaint in the first action, (Compl. in the first action, ¶ IV.A); and (2) nothing in the complaint in the second action, i.e., he left that section of the complaint blank, (Compl. in the second action, ¶ IV.A).

In the first action, plaintiff seeks to recover damages in the amount of "$1,000,00" for the time he has spent in jail and to be released from custody. (Compl. in the first action, ¶ V; Stat. in the first action, at 2). In the second action, plaintiff seeks to recover damages in the amount of five million dollars ($5,000,000.00) "for all the Persecution And Pain[,]" and to be discharged or released from prison. (Compl. in the second action, ¶ V; Stat. in the second action, at 2).

II. Discussion

    A. Consolidation

Rule 42(a) of the Federal Rules of Civil Procedure provides that "[i]f actions before the court involve a common question of law or fact, the court may: * * * consolidate the actions; or [] issue any other orders to avoid unnecessary cost or delay." See Devlin v. Transportation

Communications International Union, 175 F.3d 121, 130 (2d Cir. 1999). District courts have broad discretion to determine whether consolidation is appropriate, see Johnson v. Celotex Corp., 899 F.2d 1281, 1284-1285 (2d Cir. 1990), and may consolidate actions under Rule 42(a) *sua sponte*. See Devlin, 175 F.3d at 130. Moreover, cases may be consolidated where, as here, there are different parties in the complaints. See Werner v. Satterlee, Stephens, Burke & Burke, 797 F. Supp. 1196, 1211 (S.D.N.Y. 1992) ("The fact that there are different parties in this action does not mean this case should not be consolidated."); see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc., 229 F.R.D. 395, 402 (S.D.N.Y. 2004) (holding that the fact that certain defendants are named in only one or some of the complaints to be consolidated does not preclude consolidation).

Consolidation "should be prudently employed as a valuable and important tool of judicial administration, * * *, invoked to expedite trial and eliminate unnecessary repetition and confusion * * *." Devlin, 175 F.3d at 130 (internal quotations and citations omitted). Nonetheless, although considerations of judicial economy generally favor consolidation, "[c]onsiderations of convenience and economy must yield to a paramount concern for a fair and impartial trial." Johnson, 899 F.2d at 1285; see also Chem One, Ltd. v. M/V RICKMERS GENOA, 660 F.3d 626, 642 (2d Cir. 2011); Devlin, 175 F.3d at 130 ("[E]fficiency cannot be permitted to prevail at the expense of justice * * *.") In determining whether consolidation is appropriate, the court must consider:

> "Whether the specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives."

6

Johnson, 899 F.2d at 1285 (quotations, brackets and citations omitted).

Both actions were recently filed, have not yet proceeded to discovery and involve similar allegations relating to purported civil rights violations by law enforcement officials relating to plaintiff's November 5, 2012 arrest and subsequent prosecution, and there will be minimal, if any, prejudice or confusion to the parties in consolidating these actions. Therefore, in the interests of judicial economy and efficiency, and to minimize the expense and burden on all parties in prosecuting and defending multiple lawsuits, the two (2) actions are consolidated for all purposes. The actions will proceed under docket number 13-cv-4047 (the "lead case"), all papers filed in these actions shall henceforth bear only the lead case docket number, the caption of this consolidated action shall be amended in accordance with this Order and the action assigned docket number 13-cv-6514 shall be administratively closed.

B.  Standard of Review

Under both the Prison Litigation Reform Act, 28 U.S.C. § 1915A, and the *in forma pauperis* statute, 29 U.S.C. § 1915(e)(2), a district court must dismiss a complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B). See Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007) (finding both Section 1915 and Section 1915A to be applicable to a prisoner proceeding *in forma pauperis*).

It is axiomatic that district courts are required to read *pro se* complaints liberally, Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)); Hogan v. Fischer, 738 F.3d

7

509, 515 (2d Cir. 2013), and to construe them "'to raise the strongest arguments that they suggest." Gerstenbluth v. Credit Suisse Securities (USA) LLC, 728 F.3d 139, 142-43 (2d Cir. 2013) (quotations and citations omitted). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations in the complaint." Harrington v. County of Suffolk, 607 F.3d 31, 33 (2d Cir. 2010); see also Ashcroft v. Iqbal 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Nevertheless, a complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson, 551 U.S. 89, 127 S. Ct. 2197 (quotations and citation omitted); see also Anderson News, LLC v. American Media, Inc., 680 F.3d 162, 182 (2d Cir. 2012), cert. denied by Curtis Circulation Co. v. Anderson News, LLC, --- U.S. ----, 133 S. Ct. 846, 184 L. Ed. 2d 655 (2013) (accord). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft, 556 U.S. at 678, 129 S. Ct. 1937 (quoting Twombly, 550 U.S. at 555, 127 S. Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955); see also Pension Benefit Guaranty Corp. ex rel. St. Vincent Catholic Medical Centers Retirement Plan v. Morgan Stanley Investment Management Inc., 712 F.3d 705, 717 (2d Cir. 2013)(accord). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft, 556 U.S. at 678, 129 S. Ct. 1937; see also In re Amaranth Natural Gas Commodities Litigation, 730 F. 3d 170, 180 (2d Cir. 2013).

8

C.  Section 1983

Section 1983 of Tile 42 of the United States Code provides, in relevant part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." Filarsky v. Delia, — U.S. —, 132 S. Ct. 1657, 1661, 182 L. Ed. 2d 662 (2012). Thus, to state a Section 1983 claim, a plaintiff must allege: (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)); see also Rehberg v. Paulk, --- U.S. ----, 132 S. Ct. 1497, 1501-02, 182 L. Ed. 2d 593 (2012).

1.  Release from Custody

As indicated in the October Order, to the extent plaintiff again seeks to be released from custody, such relief is not available in a Section 1983 action. See, e.g. Keyes v. Juul, 270 F. Supp. 2d 327, 330 (E.D.N.Y. 2003) ("[I]nsofar as plaintiff seeks release from custody, he can do so only on a properly submitted petition seeking a writ of habeas corpus, not in a Section 1983 action.") See generally Preiser v. Rodriguez, 411 U.S. 475, 490, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973) (holding that habeas relief is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release from custody).

"Requests for release from custody must be brought under the narrow remedy available in federal habeas corpus, not through a damage action." Baker v. New York State Executives and Officers, No. 12 Civ. 1090, 2012 WL 2358162, at * 2 (E.D.N.Y. June 20, 2012); see also Muhammad v. Close, 540 U.S. 749, 750, 124 S. Ct. 1303, 158 L. Ed. 2d 32 (2004) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus * * *.") Accordingly, plaintiff's Section 1983 claims in the second action seeking release from custody are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim for relief.[1]

### 2. Damages

Plaintiff's Section 1983 claims seeking damages in the second action are in the nature of false arrest, false imprisonment and malicious prosecution. Where, as here, a plaintiff files a civil rights action seeking damages, *inter alia*, for false arrest, false imprisonment or malicious prosecution before the termination of the criminal proceedings against him, "it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." Wallace v. Kato, 549 U.S. 384, 393-94, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007); see also Heck v. Humphrey, 512 U.S. 477, 487 n. 8, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994) ("[I]f a state criminal defendant brings a federal civil-rights lawsuit during the pendency of his criminal trial, appeal, or state habeas action, abstention may be an appropriate response to the parallel state-court proceedings.") "If

---

[1] The dismissal of plaintiff's Section 1983 claims in the second action seeking release from custody is without prejudice to plaintiff filing a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241, *et seq.*

10

the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, Heck will require dismissal [of the Section 1983 claims]; otherwise, the civil action will proceed, absent some other bar to suit." Wallace, 549 U.S. at 394, 127 S. Ct. 1091. Accordingly, plaintiff's Section 1983 claims in the second action seeking damages are stayed pending the termination of the underlying criminal proceedings against him. This consolidated case shall be administratively closed, **with leave to reopen within two (2) weeks of the termination of the underlying criminal proceedings against plaintiff.**

**PLAINTIFF IS ADVISED THAT A FAILURE TO SEEK TO REOPEN THIS ACTION WITHIN TWO (2) WEEKS OF THE TERMINATION OF THE UNDERLYING CRIMINAL PROCEEDINGS AGAINST HIM MAY RESULT IN THE DISMISSAL OF HIS SECTION 1983 CLAIMS SEEKING DAMAGES IN THEIR ENTIRETY WITH PREJUDICE.**

3. Claims against Moralles, Robinson and ATM Real Estate

"To state a claim under 42 U.S.C. § 1983, the plaintiff must show that a defendant, acting under color of state law, deprived him of a federal constitutional or statutory right." Sykes v. Bank of America, 723 F.3d 399, 405-06 (2d Cir. 2013); see also Fabrikant v. French, 691 F.3d 193, 206 (2d Cir. 2012) ("[A] litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action. * * * A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action. * * * State action requires both an alleged constitutional deprivation * * * and that the party

11

charged with the deprivation must be a person who may fairly be said to be a state actor." (alterations, quotations and citations omitted)). Section 1983 liability may only be imposed upon wrongdoers "who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." National Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 191, 109 S. Ct. 454, 102 L. Ed. 2d 469 (1988)(quotations and citation omitted); see also Hafer v. Melo, 502 U.S. 21, 28, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) ("Congress enacted §1983 to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." (quotations and citations omitted)). Moralles, as the superintendent of the building in which plaintiff lives; Robinson, as a tenant in that same building; and ATM Real Estate, as the owner of that building, clearly were not acting "under color of state law" for purposes of Section 1983 with respect to the conduct attributed to them in the complaint.

Nevertheless, "[a] private actor may be liable under § 1983 * * * if there is a sufficiently close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." Sykes, 723 F.3d at 406 (quotations, internal quotations and citations omitted); see also Fabrikant, 691 F.3d at 206-07 ("Conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character that it can be regarded as governmental action. * * * [T]here must be such a close nexus between the state and the challenged action that the state is responsible for the specific conduct of which the plaintiff complains." (quotations, alterations, emphasis and citations omitted)). "Anyone whose conduct is fairly attributable to the state can be sued as a state actor under § 1983."

12

Filarsky, — U.S. —, 132 S. Ct. at 1661; see also Fabrikant, 691 F.3d at 207 ("The fundamental question * * * is whether the private entity's challenged actions are 'fairly attributable' to the state." (quoting Rendell-Baker v. Kohn, 457 U.S. 830, 838, 102 S. Ct. 2764, 73 L. Ed. 2d 418 (1982))). "Three main tests have emerged:

> For the purposes of section 1983, the actions of a nominally private entity are attributable to the state . . . (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ('the compulsion test'); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity has been delegated a public function by the state ('the public function test')."

Fabrikant, 691 F.3d at 207 (quoting Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008) (alteration in original)).

Even reading the complaint liberally and drawing all reasonable inferences therefrom in favor of the plaintiff, there is no basis on which to find that Moralles, Robinson and ATM Real Estate were acting under color of state law for purposes of Section 1983 with respect to the conduct attributed to them in the complaint. Accordingly, plaintiff's Section 1983 claims against Moralles, Robinson and ATM Real Estate are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim for relief, unless, **within thirty (30) days from the date this case is re-opened as set forth above,** plaintiff files an amended complaint pleading sufficient facts from which it may plausibly be inferred that Moralles, Robinson and ATM Real Estate were acting under color of state law within the meaning of Section 1983.

13

III.     Conclusion

For the reasons set forth above, plaintiff's application to proceed *in forma pauperis* in the second action is granted; the above-designated actions are *sua sponte* consolidated for all purposes, including trial, to proceed under docket number 13-cv-4047; plaintiff's Section 1983 claims seeking release from custody are *sua sponte* dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim for relief, without prejudice to filing a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241, *et seq.*; plaintiff's Section 1983 claims seeking damages are stayed pending termination of the underlying criminal proceedings against him; and plaintiff's Section 1983 claims against Moralles, Robinson and ATM Real Estate are *sua sponte* dismissed in their entirety with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim for relief unless, **within thirty (30) days from the date this case is re-opened**, plaintiff files an amended complaint in accordance with this Order. The Clerk of Court shall: (1) reopen the lead case for the limited purpose of consolidating the first and second actions and amending the caption of the lead case in accordance with this Order, (2) administratively close the action under docket number 13-cv-6514; (3) administratively close the consolidated lead case, with leave to reopen within two (2) weeks of the termination of the underlying criminal proceedings against plaintiff; and (4) pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, serve notice of entry of this order upon all parties in accordance with Rule 5(b) of the Federal Rules of Civil Procedure. No summons shall issue at this time.

14

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

**SO ORDERED**.

s/ Sandra J. Feuerstein

Sandra J. Feuerstein
United States District Judge

Dated: January 23, 2014
Central Islip, New York